# HURWITZ STAMPUR & ROTH
### ATTORNEYS AT LAW

MICHAEL HURWITZ  
WILLIAM J. STAMPUR  
JAMES ROTH

299 BROADWAY, SUITE 800  
NEW YORK, N.Y. 10007

(212) 619-4240  
FAX (212) 619-6743

June 12, 2012

**BY ECF**  
Honorable Richard J. Sullivan  
United States District Court  
Southern District of New York  
500 Pearl Street  
New York, NY 10007

              Re:    **United States vs. Edwin Ruiz**  
                        **11CR676-08(RJS)**

Dear Judge Sullivan,

This sentencing memorandum is to serve as an aid for the Court in the sentencing of Edwin Ruiz on July 13, 2012.

## OFFENSE CONDUCT

On February 15, 2012 the defendant plead guilty to a lesser included offense under Count 1, 21 USC 841(b)(1)(B), a conspiracy to distribute at least one kilogram but less than three kilograms of heroin. The defendant was indicted along with eight other co-defendants.

The PSR states co-defendant Rodriguez and Ismael Canales supplied heroin to the defendant Ruiz and others. The various street-level dealers, Delarosa, Canales, Beltre, Ruiz and Cotto all generally operated independently of each other.

## OFFENSE LEVEL

The plea agreement and the PSR state the total offense level is 29. However, the plea agreement contain a Criminal History II while the PSR had a Criminal History III, because at the time the instant offense was committed the defendant was on probation, therefore two criminal history points were added. The plea agreement neglected to add these two points.

The stipulated guideline range in the plea agreement was 97-121 months, the guideline range in the PSR is 108-135 months. The statutory minimum term is 60 months.

1

MH/RUIZ.E/SENTLTR

Hurwitz Stampur & Roth

## CRIMINAL HISTORY

In 1995, at age 16 the defendant was adjudicated a youthful offender on a Petty Larceny charge and received zero criminal history points.

In 2005, at age 26 the defendant was in possession of a forged New York City Health and Hospital Police Department restricted parking permit. The defendant pled guilty to the forged instrument and received one criminal history point.

In 2006, the defendant received five years probation for the sale of controlled substance to an undercover police officer. The defendant received one criminal history point for this conviction and two criminal history points for committing the instant offense while on probation for a total of four points and a criminal history category of III.

## FAMILY HISTORY

Defendant was born in 1978 in the Bronx. His father works as a building superintendant and his mother is disabled due to problems with her nervous system. The defendant has one maternal half brother and seven paternal half siblings.

Shortly after the defendant was born his parents separated and he was raised by his mother until he moved in with his maternal grandparents at age five. His grandparents cared for him for two or three years until his mother moved into an apartment in the same building as her parents, before that she was in Puerto Rico. His father visited him on weekends and the defendant maintained a stable relationship with all family members.

In 2001, defendant had a consensual relationship with Jessica Mendoza. They have a son, Andrew Ruiz, age ten who resides with his mother in the Bronx.

In 2003, defendant had a consensual relationship with Chyna Ramos. They have two children together, Dezire Ruiz, age seven, and Magan Ruiz, age two. The children reside with their mother in the Bronx.

In 2000, defendant met Daisy Betances. In 2011 they were married and together have a daughter, Bryanna Betances, age five. The child is with her mother in the Bronx. Ms. Betances is expecting her second child with the defendant in July, 2012.

The PSR states Ms. Betances is currently unemployed due to complications with her pregnancy and is financially supported by public assistance benefits.

MH/RUIZ,E/SENTLTR

Ms. Betances describes Mr. Ruiz as a "family-oriented and hardworking" individual who was a good husband who "loves his children." She also stated that he is actively involved in caring for all his children. Ms. Betances states that she is supportive of Mr. Ruiz and remains committed to their marriage. Mr. Ruiz states that when he is released from custody he plans to reside with his wife and daughter.

A letter of support was sent to Your Honor from his friend Yuki Campbell. She describes Mr. Ruiz as a faithful and dedicated husband and a loving father. She asked for leniency as he is remorseful for his conduct, and for the emotional and financial support he can provide for his wife and children.

Mr. Ruiz has provided Your Honor with a hand-written letter apologizing for his conduct and describes his personal history. He describes his early childhood, living with his grandparents and the ill health of his parents. His mother is currently on public assistance due to her medical condition. Mr. Ruiz describes his difficulties with school and his use of liquor and drugs, and the fact that he surrounded himself with people involved with the sale and use of drugs. This lifestyle resulted in his first arrest at age 16.

Later after the birth of his son and daughter, and while Mr. Ruiz had a broken leg and was on crutches for two years and could not work, he started selling drugs for financial gain. Mr. Ruiz states that after a period of time he started to reevaluate his life and obtained employment in a videogame store. However, he started selling drugs again because he could not provide for his family. In 2006, Mr. Ruiz was arrested on a drug charge and received probation.

In 2009, his daughter, Magan Ruiz, was born with Down syndrome. During this time, while on probation, Mr. Ruiz was drug free and employed. In 2009/10, Mr. Ruiz started using drugs and was earning less income. During this time he completed an outpatient drug program but was concerned about his family and providing them with a stable living space, and started to sell drugs again until he was arrested.

Mr. Ruiz states that his wife has received an eviction notice because she cannot pay the rent since she cannot work. Mr. Ruiz asked for leniency so he can provide for his family.

### PHYSICAL HEALTH

In 2009, the defendant sustained a head injury and broke a forearm during a motorcycle accident. He received physical therapy for one year.

In 2003, Mr. Ruiz underwent reconstructive surgery to repair his left shoulder after sustaining injury during an auto accident.

3

### SUBSTANCE ABUSE

The PSR states that Mr. Ruiz has used marijuana, cocaine, ecstasy, angel dust and alcohol.

In 2009, the defendant completed a nine-month outpatient drug program and also completed an eighteen-month drug program which consisted of fourteen months inpatient and four months outpatient. While on pre-trial the defendant tested negative for all drugs. The defendant asks that he be place in a drug program while incarcerated with the Bureau of Prisons.

### EDUCATION AND VOCATIONAL SKILLS

In 2007, the defendant completed a one-year course in computer graphics. Mr. Ruiz left school in the tenth grade due to adjustment problems.

### EMPLOYMENT

From 2005 to 2012 Mr. Ruiz purchased vehicles at auctions, refurbished them and then resold the vehicles. Prior to 2005, the defendant worked at a print publication company for more than two years. From 2003 to 2005 defendant worked as an installer of internet wiring and surveillance monitors. He also worked as a store manager at Videogame World in 1997.

### SENTENCING FACTORS

As the Court is aware, Federal Sentencing Guidelines are not binding but are merely advisory. *See United States v. Booker*, 125 S.Ct. 738 (2005) (excising the mandatory provisions of the guidelines and corresponding Sentence Reform Act (SRA), principally 18 U.S.C. §3553(b)(1)); *Gall v. United States*, 128 S.Ct. 586 (2007); *Kimbrough v. United States*, 128 S. Ct. 558 (2007). There is a duty to consider the Guidelines, among all the other factors to be considered that are identified in 18 U.S.C. §3553(a), and then determine whether to impose a "non-guidelines sentence." *See United States v. Crosby*, 397 F.3d. 103 (2d Cir. 2005). Appellate review will be for reasonableness. *Id.*

In *Gall*, the Supreme Court restored broad discretion to district court judges encouraging them to impose the sentence they deem most appropriate after considering all of the sentencing factors set forth in 18 U.S.C. § 3553(a). *Gall* involved a sentence of probation imposed on Brian Michael Gall who, while he was in college had distributed the illegal drug "ecstasy." Gall's guideline sentencing range for his crime was 30-37 months in prison, however; after concluding that Gall's post-offense conduct indicated that he would not return to criminal

Hurwitz Stampur & Roth

behavior and that he was not a danger to society, the District Court imposed a non-prison sentence of three years probation.

The Eight Circuit vacated Gall's sentence as unreasonable holding that such a variance had to be supported by "extraordinary circumstances."

The Supreme Court reversed the Circuit Court holding that while the Guidelines should be "the starting point and the initial benchmark" of a reasonable sentence, the sentencing judge "may not presume that the Guideline range is reasonable" and instead "must make an individualized assessment based on the facts presented." *Gall* at 596-597. Thus the Supreme Court rejected the Eight Circuit's decision requiring that a below Guidelines sentence need be justified by extraordinary circumstances.

Judge Raggi, in *United States v. Jones*, 531 F.3d 163, 170 (2d Cir. 2008), noted that "while a sentencing court is statutorily obligated to give fair consideration to the Guidelines before imposing sentence....in the end it must make an 'individualized assessment' of the sentence warranted by § 3553(a) 'based on the facts presented.'" Indeed, Judge Raggi writes "the sentencing court's deference derives, in part, from its unique ability to make such assessments." *Jones*, 531 F.3d at 170. As *Gall* emphasized, district courts have two distinct institutional advantages in determining what sentence best achieves the purposes of Section 3553(a) in a given case. First, district courts impose scores of sentences each year, in short they have institutional experience that elevates their decision making competence. Second, the district court is in a superior position to find facts relevant to sentencing and judge their import under Section 3553(a).

In concluding for the court, Judge Raggi notes that "sentencing is not . . . a precise science . . . Rarely if ever to do the pertinent facts dictate one and only one appropriate sentence. Rather, the facts may frequently point in different directions so that even experienced district judges may reasonably differ, not only in their findings of fact, but in the relative weight they accord competing circumstances. Such reasonable differences necessarily mean that, in the great majority of cases, a range of sentences, frequently extending well beyond the narrow ranges prescribed by the Guidelines---must be considered reasonable." *Id.* at 13.

In *Kimbrough*, the Supreme Court held that a district judge may consider the crack/powder disparity when sentencing crack cocaine offenders, and impose a below-Guidelines sentence if it determines that a within-Guidelines sentence is "greater than necessary" to serve the objectives of sentencing set forth at 18 U.S.C. § 3553(a). *Kimbrough*, 128 S.Ct. at 91. The Court also rejected the Fourth Circuit's rationale that a sentence outside the Guidelines is "per se unreasonable" because it is based on a disagreement with the crack powder disparity. *Id.*

5

HURWITZ STAMPUR & ROTH

Even if this Court were to agree with the sentencing range set forth by the Guidelines, the Court is vested with a broad degree of discretion enabling the Court to render a more fair non-Guidelines sentence, which serves the purpose of sentencing in an objective and fair way without unduly punishing the defendant or his family in a manner inconsistent with the statutory scheme.

18 U.S.C. § 3553(a) provides that: The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider:

- A. the nature and circumstances of the offense and the history and characteristics of the defendant;

- (2) the need for the sentence imposed;

    - (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    - (B) to afford adequate deterrence to criminal conduct;

    - (C) to protect the public from further crimes of the defendant; and

    - (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

- (3) the kinds of sentences available;

- (4) the kinds of sentence and the sentencing range established for;

    - (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines…;

- (5) any pertinent policy statement…[issued by the Sentencing Commission];

- (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

- (7) the need to provide restitution to any victims of the offense.

HURWITZ STAMPUR & ROTH

## CONCLUSION

Mr. Ruiz has a compelling case for a sentence below the guidelines pursuant to 18 U.S.C. §3553(a). Mr. Ruiz's criminal history category three is more severe than the plea agreement because of the two points added for committing this offense while on probation. The underlying offense for the violation which was five years previous to this indictment involved a sale to an undercover officer. Aside from that offense his only other adult conviction was the possession of the forged instrument.

It is apparent Mr. Ruiz was raised under difficult circumstances both economically and emotionally since his parents were not always there to help guide him and in fact added to his difficulties due to their own problems. Mr. Ruiz was having difficulty adjusting to school and became involved at an early age with illicit drugs. Mr. Ruiz describes his financial needs which led to his previous drug conviction and the conviction on this indictment. His past economic circumstances cannot provide an excuse for his illegal conduct but does give a perspective to the court of his situation at the time of his illegal conduct.

In this case, Mr. Ruiz was selling heroin as a street-level dealer but he does not have an extensive criminal history. A sixty month period of incarceration should be a sufficient penalty.

Thank you for your consideration.

Sincerely,

Michael Hurwitz

MH:vl